**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

**UNITED STATES OF AMERICA,**

**Plaintiff**

**v.**                                                                    **CRIM CASE NO. 14-719 (GAG)**

**DAVID APONTE VILLABA, JAN RIVERA LE DOUX AND CHRISTIAN LA LUZ JIMÉNEZ,**

**Defendants.**

## **OPINION AND ORDER**

Defendants David Aponte-Villalba ("Aponte-Villalba"), Jan Rivera-Le Doux ("Rivera-Le Doux") and Christian La Luz-Jiménez ("La Luz-Jiménez") are charged with violations of the Hobbs Act, 18 U.S.C. § 1951; possession of a firearm during and in relation to a crime of violence, 18 U.S.C. 924(c)(1)(A); theft of a firearm, 18 U.S.C. § 924 (l); and aiding and abetting, 18 U.S.C. § 2. Because the victim was murdered, they are also eligible for a death sentence.

On December 8, 2014, the United States filed a motion requesting the court to order Defendants to provide hair, blood, fingerprint, palm print, and saliva samples for comparison to the DNA, blood, and other evidence samples collected from the scene of the crime and the vehicle allegedly used by Defendants when the crime was committed. (Docket Nos. 23 & 26.) The government renewed its request at Docket No. 146. Defendant Rivera-Le Doux opposed said motion, arguing that the Government's request constitutes a violation of his Fourth Amendment right to be free from unreasonable searches and seizures. (Docket No. 29.) Namely, Defendant

1

**Crim Case No. 14-719 (GAG)**

Rivera-Le Doux argues that such a request requires a showing of probable cause and that the request lacks the sufficient particularity to meet the probable cause standard. (Id. at 3.) Lastly, Rivera-Le Doux requests a hearing to discuss the Government's supporting evidence and the reasonableness and methods to be used to ensure that the intrusion is minimal and trustworthy. (Id. at 3). Defendants Aponte-Villalba and La Luz-Jiménez joined Rivera-Le Doux's opposition. (See Docket Nos. 176 & 178).

I.      **Legal discussion**

"Virtually any 'intrusio[n] into the human body will work an invasion of 'cherished personal security' that is subject to constitutional scrutiny." Maryland v. King, __ U.S. __, 133 S. Ct. 1958, 1969, 186 L. Ed. 2d 1 (2013). The United States Supreme Court has applied the Fourth Amendment to police efforts to obtain DNA using a buccal swab in the inner tissues of a person's cheek, draw blood, scraping an arrestee's fingernails to obtain trace evidence, and to breathalyzer tests. Id. (citing Missouri v. McNeely, 569 U.S. __, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013); Schmerber v. California, 384 U.S. 757, 770, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966)); see also Cupp v. Murphy, 412 U.S. 291, 295, 93 S. Ct. 2000, 36 L. Ed. 2d 900 (1973); Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 616, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989)).

Without a doubt, the Government's request for hair, blood, fingerprint, palm print, and saliva samples implicates the Fourth Amendment. See Schmerber, 384 U.S. at 767 (noting administration of a blood test is clearly within the constraints of the Fourth Amendment). The determination of whether an individual's Fourth Amendment rights have been violated in a case such as this entails a factual analysis into the context of his or her reasonable expectation of privacy and whether the means and procedures employed in administrating the tests are

**Crim Case No. 14-719 (GAG)**

reasonable. See id. at 768. To pass constitutional muster, these Fourth Amendment searches must meet the probable cause standard and the Fourth Amendment standards of reasonableness. See id.

The Supreme Court has acknowledged the difference between Fourth Amendment searches of the public at large "to detect evidence of criminal wrongdoing" and those searches of individuals who are already lawfully under police custody. King, 133 S. Ct. at 1978. "Once an individual has been arrested on probable cause for a dangerous offense that may require detention before trial, . . . his or her expectations of privacy and freedom from police scrutiny are reduced." Id. In these situations, an individual is already on notice that some reasonable police intrusion on his privacy is to be expected. Id. at 1979.

Turning to the present case, all three Defendants have been indicted for a robbery that led to the shooting and death of Edwin Roman-Acevedo. (Docket No. 18.) At this juncture in the proceedings, the probable cause standard has thus already been met as to all three Defendants. More so, the samples requested by the Government are material to the alleged conduct. These samples will help corroborate the evidence located at the scene of the crime. Lastly, samples taken from the Defendants will be preserved for testing by Defendants' experts.

The court further finds that this search is reasonable. The "traditional standards of reasonableness requires [the] court to weigh the promotion of legitimate governmental interests against the degree to which [the search] intrudes upon an individual's privacy." Wyoming v. Houghton, 526 U.S. 295, 300, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999) (internal citations omitted). As established in Schmerber, this court must take into consideration three factors beyond the probable cause threshold. 384 U.S. at 771. First, that the court understands that the procedures Defendants will have to undergo do not pose a risk to their health. See Winston v. Lee, 470 U.S. 753, 761, 105 S. Ct. 1611, 84 L. Ed. 2d 662 (1985); USA v. García Ortiz, 261 F. Supp.

3

2d 56, 58-59 (D.P.R. 2003). Second, the court must consider the extent of the intrusions to upon Defendants' dignitary interests in their personal privacy and bodily integrity. See Winston, 470 U.S. 753. The samples requested are not obtained via extraordinary procedures, but rather by routine medical practice. The court expects that the Government will use the least intrusive measures and obtain only the necessary content of each sample. Additionally, the procedures to obtain the samples must be conducted by qualified medical personnel. Lastly, the court understands that the community's interests in fairly and accurately determining guilt or innocence outweigh Defendants' individual pleas. Id. at 762. As stated above, these procedures are routine medical practice, not rocket science. Certainly, the community's interest in determining the guilt or innocence of the authors of such a heinous crime, as is this case, outweighs Defendants' inconvenience of being subjected to these procedures.

Moreover, the court notes that physical evidence, such as voice, blood, handwriting, is not protected by the Fifth Amendment's right against self-incrimination. See U.S. v. Dionisio, 410 U.S. 1 (1973); U.S. v. Mara, 410 U.S. 19 (1973).

Consequently, the court hereby **ORDERS** all three Defendants to provide hair, blood, fingerprint, palm prints, and saliva samples for analysis and comparison. The tests must be performed no later than **March 20, 2015**.

**S**O **ORDERED.**

In San Juan, Puerto Rico this 6th day of March, 2015.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

4